IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DAVID W. SPELLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 05-0057-CV-W-ODS |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in February 1958 and has completed high school. He has prior work experience as siding installer, auto salesman, furniture salesman, building supply salesman, and box assembler. On December 21, 2001, Plaintiff was intoxicated and attempting to cross a highway on foot when he was hit by an SUV. His major injuries consisted of whiplash, a fractured pelvis, and a lacerated aorta. Plaintiff underwent surgery and was discharged from the hospital on January 11, 2002. At the time of discharge, Plaintiff was medically stable and able to ambulate with a pair of crutches. He was prescribed aspirin and a mild pain reliever (Lortabs) as needed and instructed to attend follow up appointments to monitor his recovery from the broken pelvis and the surgery on his aorta. R. at 267-68. Plaintiff went to the VA Hospital on February 15, 2002; he was still using crutches even though he had been released for "full weight bearing." He reported that his "back still hurts some but is much better" and reported pain in his left shoulder. X-rays revealed a mildly separated shoulder. R. at 206, 211.

On April 24, Plaintiff continued to complain of pain in his shoulder and also reported pain in his right knee and numbness in his thighs. He reported no pain in his pelvic region. Plaintiff was told surgery would not remedy his shoulder and was told to undergo physical therapy. Nothing was observed with regard to Plaintiff's knee except a possible laxity in the anterior cruciate ligament. R. at 295-96.

Plaintiff returned at regular intervals for physical therapy. On June 5, 2002, Plaintiff walked into the clinic at the VA Hospital without an assistive device and without any problems with his gait. He reported mild pain, but also reported that he was using the stairs instead of the elevator in his apartment building for exercise and was also walking four miles three to four times a week. R. at 304-05. The following week, he reported encountering difficulties with his knee when he ran but denied experiencing any pelvic pain. His knee problem was regarded as minor, and his shoulder was noted to be improving. R. at 308-09. On July 10, 2002, he reported that his pain was decreasing and that he continued to walk and exercise regularly. R. at 316. He also reported that a TENS unit was very effective in reducing his pain. R. at 321.

Plaintiff has also reported difficulties with alcohol abuse and mental/emotional problems. His problems with alcohol started when he was fourteen, and he has also abused prescription pain medication and illegal narcotics. R. at 127. Since his discharge from the Army, Plaintiff "has been in and out of sobriety with his longest period lasting about 4 ½ years." R. at 128. His past participation in treatment programs has been marked by a failure to adhere to attendance requirements. He has also been diagnosed as suffering from bipolar disorder, although the date of the initial diagnosis is not clear. During a visit to the VA Hospital on April 28, 2002, Plaintiff complained of "racing thoughts;" however, the record does not reflect that anything was done at this time (although his prescription for anti-anxiety medication was continued). R. at 297. In August 2002, Plaintiff was described as not experiencing any problems. R. at 322. However, on February 24, 2003, Plaintiff tested positive for alcohol use (after professing to not have imbibed since the December 2001 accident), was diagnosed as depressed and referred for mental health treatment. R. at 323. There is no further record from this time period. In late March, Plaintiff reported experiencing blackouts and near-blackouts

2

that began shortly after he last drank alcohol two weeks prior. R. at 326. Seizures were ruled out, R. at 331, and after days of testing doctors could not ascertain a cause for his complaints. Plaintiff was discharged a few days later after several days without symptoms. R. at 344-46. Plaintiff underwent an EEG on April 23, 2003, and while the results were abnormal a definitive diagnosis could not be made without further testing. R. at 351-52. There is no record of additional testing, but on May 21, Plaintiff went to the emergency room at St. Luke's Hospital complaining of light-headedness, nausea and dizziness that the doctors related to his recent alcohol use. R. at 499. He returned to the VA Hospital that same week and again in early June, at which time he was admitted for inpatient treatment for alcohol abuse. He was discharged in late June. In July, he reported that he was staying sober and the dizzy spells were diminishing in frequency. By September 2003, they were occurring no more than once per week. R. at 578. In November 2003, he reported no recurrence of his problems. R. at 560. A similar report was made in January 2004. R. at 540.

During the hearing, Plaintiff reported that he participated in a work therapy program through the VA in January, making and filling cardboard boxes. He was paid a piece rate that varied depending upon the job, with minimum pay equal to minimum wage. The work was assigned as part of his therapy for alcohol abuse, and ended when his therapy ended. R. at 616-18. He last drank alcohol in February 2004; an episode he described as a relapse lasting for two weeks. R. at 624, 632. He testified that he continues to experience pain in his hips extending to his knees as well as numbness in both legs above the knees. R. at 625-26. He takes Tylenol but does not take anything stronger because of his history of substance abuse. R. at 626. He estimated that he could stand for fifteen minutes at a time, sit for fifteen minutes at a time, walk for half a mile, and lift no more than ten pounds. He experiences dizzy spells "to some degree or another, every day, but there are spells that occur less often than that. They might occur several times a day or maybe not. Maybe every other day." R. at 627. He described himself as suffering from disorientation and visions of "white blots" before his eyes on a regular basis. R. at 628. Plaintiff admitted that he generally felt better after returning to sobriety, but the dizziness never goes away completely. R. at 632-33. Plaintiff reported

that his bipolar disorder manifests itself in cycles between manic episodes where his mind races wildly to periods of depression, with the cycles between extremes occurring twice a month. R. at 633-34. When his mind races he has problems concentrating, and when he is depressed he sleeps for seventeen hours a day. R. at 634.

A Vocational Expert ("VE") testified in response to hypothetical questions. When asked to assume an individual of Plaintiff's age, education, and employment background who could perform medium work but needed to avoid climbing and overhead work with his left arm, the VE testified that such an individual could perform all his or her past relevant work. R. at 638-39. When asked to consider hypothetical modified to limit the individual to light work, the VE testified the person could perform their past work as a salesperson. R. at 639. The third hypothetical changed the second one to add a limitation on sitting and standing to no more than thirty minutes at a time but without limitation over the course of a day so long as the person had the option to sit or stand. The VE testified that such an individual could not perform his past work but could perform work as parking lot cashier, gate guard, or cashier. R. at 639-40. When asked to assume an individual who had dizziness or lightheadedness lasting for ten to thirty minutes four times a day that precluded any activity, the VE testified such a person could not work. R. at 640-41. Similarly, the VE testified that a person who had "marked problems with respect to maintaining concentration and persistence and pace throughout a 40 hour workweek" could not work. R. at 641-42.

The ALJ concluded Plaintiff suffered from a severe impairment that did not meet or equal a listed impairment. However, the ALJ noted Plaintiff's mental impairments were related to his abuse of alcohol (and, to a lesser extent, abuse of drugs) and that the record "does not show the existence of any medically determinable mental impairment during an extended period in which he has abstained from drinking or taking drugs. I conclude that the claimant has not shown the existence of a medically determinable mental impairment independent of drugs and alcohol." R. at 19.

In evaluating Plaintiff's residual functional capacity, the ALJ found Plaintiff's testimony was not credible because (1) his testimony conflicted with his reports to doctors, (2) his

4

doctors' assessments of his condition conflicted with his testimony, (3) the record contained no indication Plaintiff's daily activities were limited, and (4) Plaintiff had a "sketchy work history." R. at 20-21. With regard to Plaintiff's physical abilities, the ALJ found Plaintiff retained the ability to perform "medium work activity with some limitations;" specifically, Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds regularly, stand, walk and sit for six hours out of an eight hour day, and limited in his ability to use his left arm for overhead work. R. at 21. Later, however, the ALJ found Plaintiff's ability to lift and carry was limited to twenty pounds occasionally and ten pounds frequently. R. at 22. Based on the VE's testimony, the ALJ concluded Plaintiff retains the residual functional capacity to perform all of his prior jobs except siding installer and box assembler. R. at 23.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

One of the most significant factors in evaluating this record is the effect of Plaintiff's alcoholism. "Where drug or alcohol abuse is a contributing factor to the determination of the disability, a plaintiff is not entitled to disability benefits unless she would be disabled if she stopped using drugs and alcohol." Slater v. Barnhart, 372 F.3d

5

956, 957 (8th Cir. 2004) (citing, *inter alia*, 42 U.S.C. § 423(d)(2)(C)). Consequently, a great many of Plaintiff's complaints and conditions may not be considered in evaluating Plaintiff's residual functional capacity. Plaintiff bears the burden of proving his alcohol or drug abuse was not a contributing factor. Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003). The medical conditions that cannot be considered include Plaintiff's swings from manic to depressive states, nausea, dizziness, headaches, and tinnitus. Evidence in the record demonstrates these ailments are (or, in the case of the tinnitus, may be) related to Plaintiff's alcoholism, and Plaintiff has not carried his burden in demonstrating otherwise.

Plaintiff is left, then, to rely on the aftereffects of the December 2001 auto accident and his separated shoulder to demonstrate his disability. The record supports the ALJ's conclusions regarding the effect these events and maladies have on Plaintiff's functional capacity, as well as the ALJ's conclusions regarding Plaintiff's ability to perform some (although not all) of his past relevant work. In particular, the ALJ's assessment of Plaintiff's functional capacity was consistent with the statements Plaintiff made to his treating physicians and the opinions offered by those doctors.

### III. CONCLUSION

For these reasons, the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

DATE: February 16, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT